In re BAUMBLATT.

(District Court, E. D. Pennsylvania. May 6, 1907.)

No. 2,621.

BANKRUPTCY—DISTRIBUTION OF ESTATE.

The owner of a saloon transferred the same, together with the good will and all property used in connection with the business, to trustees for the benefit of his creditors. The trustees transferred the stock and leased the fixtures, etc., to the bankrupt in consideration of his agreement to assume and pay the debts of the former owner. The payments were to be made to the trustees in installments, and on their completion the bankrupt was to own the property. The liquor license was transferred to him, and on his subsequent bankruptcy was sold as a part of his assets. *Held*, that the creditors of the former owner had provable claims against the bankrupt's estate, and were entitled to share ratably with subsequent creditors therein, including the fund produced by the sale of the license; such subsequent creditors having no right of priority therein.

[Ed. Note.—Franchises and licenses as assets in bankruptcy, see note to Fisher v. Cushman, 43 C. C. A. 389.]

In Bankruptcy. Reargument on certificate from referee concerning claim of Baker, Giltinan & Patterson.

Meredith Hanna and Charles B. Joy, for claimants.

J. Louis Breitinger, for trustee.

J. B. McPHERSON, District Judge. The facts out of which this controversy arises will appear in the following certificate of the referee (Richard S. Hunter, Esq.):

"Frederick G. Keer had a license to sell liquor on the premises 14, 16, and 18 South Fifteenth street, and conducted the business of a saloon keeper there for a certain length of time, at the expiration of which he was indebted to various persons to the aggregate amount of about $73,000. He then, by agreement of March 22, 1906, assigned to the trustees for the benefit of creditors all his good will, stock, fixtures, furniture, book accounts, and all other personal property and assets connected with the premises or his business, in consideration of the assumption by Emil Baumblatt of all the indebtedness due by Keer. By a contemporaneous agreement between the trustees and Emil Baumblatt, after reciting this assignment and agreement of the lessor of the premises to assign to the trustees the lease thereof, the trustees left to Emil Baumblatt the good will, fixtures, furniture, etc., connected with the premises or the business, and assigned to him all the groceries, meat, and liquors on the premises, in consideration of the covenant by Baumblatt that he should pay $5,000 forthwith to the trustees, the rentals thereafter falling due of the real estate, the keeping of the leased premises and personal property insured against fire, and the payment of certain sums each month to the trustees. Then, after certain other covenants, it was provided that, if all payments mentioned in

the agreement should be made, the good will, fixtures, furniture, etc., should be assigned to Baumblatt.

"This agreement was signed by all the creditors of Keer, including the claimant.

"Under this agreement Baumblatt entered into possession of the premises and a transfer of the liquor license from Keer to Baumblatt was approved by the court.

"Subsequently, on September 21, 1906, more than four months after the date of this agreement, Baumblatt was adjudicated a bankrupt. The scheduled indebtedness consists of $62,000 of debts mentioned in the foregoing agreement and of about $1,200 of indebtedness incurred by Baumblatt in his administration of the business. Among these latter debts is that of the claimant, which is for $236.67 for wines and liquors supplied from April 30 to June 6, 1906. The liquor license, which was the only asset belonging to Baumblatt and not covered by the agreement of March 22, 1906, was offered at public sale, and the highest bid obtained was $1,250. This sale was deemed grossly inadequate by the creditors and the referee refused to confirm the same. At a subsequent meeting held in the referee's office, the offer for the license was raised under competitive bidding to $2,100, and it was then announced as a result of an agreement between the trustee in bankruptcy and the trustees for the benefit of creditors, that the property as a whole would be sold, including fixtures, good will, restaurant, and license, and under this agreement the bidding rose to $4,600, at which the entire property, including the license, was sold to William F. Jocher. It was agreed between the trustee in bankruptcy and the trustees for the benefit of creditors that $2,600 of this purchase price should belong to the estate of Emil Baumblatt and that the balance of $2,000, less $100 for their proportion of the expenses of the sale, should belong to the trustees for creditors.

"On the 8th of November, 1906, a meeting was held at the referee's office for the declaration of a dividend, and the claimant contended that the indebtedness of Baumblatt to them, being for merchandise furnished to him during his conduct of the business, should be paid in full. Their argument in support of this contention rested substantially on two grounds—failure of consideration under the agreement of March 22, 1906, and the supposed injustice of allowing the creditors of Keer recourse to two funds where Baumblatt's individual creditors had but one.

"The failure of consideration does not appear to the referee to be an element in the case. It is true that Baumblatt did not and could not discharge his obligation under that agreement, but the essential part of that agreement, as far as these creditors are concerned, was that Baumblatt should have a going business, which, if successful, would enable him to discharge in whole or in part, the indebtedness of Keer. He did discharge a portion of this indebtedness, bringing the figures down from $73,000 to $62,000, but was unable to do more. The claimant signed the agreement, and was well aware that Baumblatt was in a position of a man without resource, except the confidence of the public and a prospect of a successful conduct of the business. There is here no such failure of consideration as can be invoked in equity.

"Nor is there here any case for marshaling of assets. The bankruptcy law plainly enacts that all creditors, except those having a priority under the terms of the act, shall receive an equal dividend. The claimant supplied the bankrupt with wines and liquors, knowing well his financial condition and having signed the agreement by which he assumed the indebtedness of Keer. The only element, therefore, which in the opinion of the referee could give them a standing in court, to wit, the existence of a secret trust, is entirely wanting.

"The referee awards to the claimant a dividend at the rate declared at the meeting of creditors."

When the case was originally argued, the evidence taken before the referee did not accompany his certificate, and was not fully brought to the attention of the court. Nothing appeared in the papers that were then laid before me to justify his conclusion that the bankrupt had assumed to pay the creditors of Keer. So far as I knew at that time,

there was no other evidence of the agreements between the parties than these papers, and my opinion was based upon their contents alone. Upon the reargument, however, all of the evidence was produced, and from this it is now clear that the bankrupt for a good consideration did assume to pay the debts of Keer. The assumption probably did not amount to a novation, but it went far enough to give Keer's creditors an additional security for their debts, namely, the bankrupt's valid promise to pay them. This being so, these creditors have a provable claim against the fund produced by the sale of the bankrupt's assets, and I am unable to see what difference it makes that part of the fund arises from the sale of the bankrupt's license. This is a salable privilege, constantly treated in this district as the transferable property of a bankrupt and an asset of his estate; and the mere fact that it has a personal quality does not give to creditors of the class to which Baker, Giltinan & Patterson belong a superior right to share in its proceeds. If the bankrupt's license had sold for enough money to pay in full the creditors who were primarily Keer's, but whose debts Baumblatt had promised to pay, and also to pay the creditors who were Baumblatt's alone, there could, I think, be no doubt that both classes would be entitled to payment out of the fund; and, in my opinion, the fact that the license sold for a smaller sum does not change the rights of either class of creditors, but simply diminishes the dividend which they are to receive.

The order entered by this court on March 30, 1907, is therefore rescinded, and the decision of the referee is now affirmed.